## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FREDERICK RIZZOLO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KIRK HENRY, *et al.,* )<br>)<br>)<br>)<br>Defendant. )<br>) | 2:12-cv-02043-APG-VCF<br><br>**O R D E R**<br><br>(Motion To Stay Discovery Pending the Court's Ruling on the Motion to Dismiss #10) |

Before the court is defendants Kirk and Amy Henry's Motion To Stay Discovery Pending the Court's Ruling on the Motion to Dismiss. (#10). Plaintiff filed an Opposition (#13), and defendants filed a Reply (#15).

**Background**

Plaintiff filed his amended complaint in the Eighth Judicial District Court, Clark County, Nevada on November 13, 2012, against defendants Kirk and Amy Henry. (#1 Exhibit C). Plaintiff's complaint arises out of a settlement agreement (hereinafter "Agreement") entered into between the plaintiff and defendants. *Id.* The defendants filed a lawsuit against plaintiff Rizzolo and The Power Company, Inc. in October of 2001, relating to injuries Kirk sustained during a September 20, 2011, incident that occurred at a club owned by plaintiff Rizzolo (hereinafter "State Action"). *Id.* The parties agreed to settle the claims for $10,000,000.00, with $1,000,000.00 due immediately and the remainder to be paid from the proceeds of the sale of plaintiff Rizzolo's club, the Crazy Horse Too, at the time of closing. *Id.* The Agreement stated that the "obligation to make the remaining payment was not contingent upon the realization of net proceeds from the sale sufficient" to make the $9,000,000.00. *Id.*

Plaintiff alleges that two months before the entry of the Agreement, on June 2, 2006, the Power

Company entered into a guilty plea agreement with the government for the crime of conspiracy to participate in an enterprise engaged in racketeering activity. *Id.* The Power Company agreed to make restitution in the amount of $10,000,000.00 to the Henrys, with $1,000,000.00 due immediately upon the entry of the Power Company's guilty plea, and the remainder due to be paid from the proceeds of the sale of the Crazy Horse Too. *Id.* Also on June 2, 2006, plaintiff Rizzolo entered into a guilty plea agreement with the government for the crime of conspiracy to defraud the United States of taxes. *Id.* The Honorable Judge Pro entered the judgment and commitment order against plaintiff Rizzolo on January 26, 2007. *Id.* The commitment order stated that plaintiff Rizzolo was to pay restitution to Kirk Henry in the amount of $10,000,000.00. *Id.*

Plaintiff Rizzolo alleges that when he began serving his sentence, Crazy Horse Too was appraised at $53 Million dollars. *Id.* On August 21, 2007, the court entered an order granting the government's motion to substitute assets, forfeiture, and sell the substituted assets and distribute the sale's proceeds in accordance with the restitution schedules. *Id.* Plaintiff alleges that on September 7, 2007, Leonard Briskman provided the US Marshals an appraisal of the Crazy Horse Too of $31,000,000.00. *Id.* Plaintiff also alleges that as intended beneficiaries of the plea agreements, the Henrys had to authorize the government's action and acquiesce to the same. *Id.* The Henrys allegedly entered into a petition and settlement agreement regarding the order of forfeiture, whereby the Henrys were placed at the top of the "pay-out" list. *Id.*

Plaintiff alleges that the Henrys "agreed to abandon their interest in the sale of the Crazy Horse Too to the United States Government, allowing the United States Government to forfeit the property, in consideration that Kirk and Amy Henry would be the first to receive any proceeds of the sale." *Id.* On May 7, 2008, the government filed and distributed a proposed amended order of forfeiture, reducing the Henrys from first to fifth position, which the Henrys objected to. *Id.* The court entered the proposed amended order of forfeiture on June 24, 2008. *Id.* Also in June of 2008, Judge Pro denied the government's motion to stay the expiration of the Exotic Dance Use Permit and Tavern License for

2

the Crazy Horse Too, which plaintiff alleges "caused the extreme devaluation of the asset substituted; *i.e.,* the Crazy Horse Too." *Id.* Plaintiff alleges that since the Marshals refused to make the mortgage payments on the seized property, the Crazy Horse Too building, on February 28, 2011, Judge Pro ordered that the Crazy Horse Too be sold through non-judicial foreclosure. *Id.*

On July 1, 2011, the Crazy Horse Too was sold to Canico Capital Group, LLC, at the non-judicial foreclosure sale for $3 million, and the Henrys did not receive any proceeds from the sale. *Id.* The Judge in the State Action issued judgment in favor of the Henrys and against Rizzolo and the Power Company on September 1, 2011, in the amount of $9,000,000.00. *Id.* The judgment provided that since the foreclosure sale did not net the proceeds required to satisfy the $9,000,000 judgment against Rizzolo and the Power Company, Rizzolo is obligated to make the remaining payment of settlement to the Henrys. *Id.* The judgment also stated that Rizzolo is in breach of the Agreement, and that the Henrys are entitled to judgment in their favor. *Id.*

Plaintiff Rizzolo filed the instant action in state court on November 6, 2012, asserting a claim for negligent interference with prospective business advantage relating to the Henrys "assigning their rights to the US Government and abandoning their ability for any recourse against the US Government." (#1 Exhibit A). Plaintiff alleges that the Henry's negligence caused damage in excess of $10,000.00. *Id.* Plaintiff filed an amended complaint on November 13, 2012, asserting claims for (1) negligent interference with prospective business advantage, and (2) declaratory relief/rescission - force majeure/impossibility. (#1 Exhibit C). The defendants removed the action to this court on November 29, 2012, based on diversity jurisdiction under 28 U.S.C. § 1332. (#1). Defendants filed a motion to dismiss on January 22, 2013. (#7). Plaintiff filed an opposition on February 8, 2013 (#8), and defendants filed a reply on February 19, 2013 (#9).

Defendants filed the instant motion to stay on April 15, 2013. (#10). The parties filed a proposed discovery plan and scheduling order on April 16, 2013. (#11). Plaintiff filed an opposition to the motion to stay on April 23, 2013. (#13). The court entered the parties' discovery plan and

3

scheduling order on April 24, 2013.  (#14).  Plaintiff filed a reply in support of the motion to stay on April 29, 2013.  (#15).

**Motion To Stay**

    **A.    Arguments**

Defendants ask this court to stay discovery in this action pending the resolution of the motion to dismiss (#7).  (#10).  Defendants argue that "discovery at this stage...is improper as the Court will likely dismiss the Complaint in its entirety and, in turn, render any discovery wholly superfluous." *Id.* Defendants also argue that no discovery is necessary for the court to decide the pending motion to dismiss (#7). *Id.* It is defendants' position that plaintiff's claim for negligent interference with prospective business advantage must be dismissed pursuant to binding Nevada law concerning the impropriety of the claim, and that plaintiff conceded to the dismissal of the claim by his failure to address it in his opposition to the motion to dismiss (#8). *Id.* Defendants assert that plaintiff's second cause of action for rescission of the Agreement is barred by the doctrine of issue preclusion, as the "contractual defense of impossibility was actually and necessarily litigated before the Nevada state court as required for the application of issue preclusion." *Id.*

Plaintiff argues that the defendants are not entitled to have discovery stayed in this action, as (1) discovery in this matter includes documentation that has been produced in two other cases, (2) defendants' counsel has been counsel on all cases, since 2001, and has easy access to the documentation, (3) most of the discovery in this matter has already been attached as an Appendix to defendants' appeal in the State Action, (4) no extraordinary burden will result from discovery, (5) plaintiff's complaint has merit and is not precluded by the doctrine of *res judicata*, as the judge in the State Action "had not even contemplated whether the Settlement Agreement was viable or not...[and] simply reduced the Judgment," (6) the decision cannot have a preclusive effect, because plaintiff appealed the State Action, and (7) the issue of impossibility was never litigated.  (#13).

Defendants assert in their reply that plaintiff "does not even address the first cause of action

4

pertaining to "negligent interference with prospective business advantage," "falsely asserts that issue preclusion should not bar discovery in this matter," and "incorrectly asserts that [d]efendants can participate in discovery as the other cases have been ongoing for years." (#15). Defendants also assert that since the issue of impossibility was raised in the State Action, dismissal of the claim and a stay of discovery are warranted. *Id.*

### B. Relevant Law

"A district court may ... stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief." *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1437, 71 L. Ed.2d 654 (1982); *B.R.S. Land Investors v. United States*, 596 F.2d 353 (9th Cir.1979) (emphasis added). The Ninth Circuit has held that staying discovery pending a motion to dismiss is permissible where there are no factual issues raised by the motion to dismiss. *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984). The court may continue to stay discovery when the court is "convinced that the plaintiff will be unable to state a claim for relief" and where "discovery is not required to address the issues raised by [d]efendant's motion to dismiss." *White v. American Tobacco Co.*, 125 F.R.D. 508 (D. Nev. 1989)(citing *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982); *Jarvis v. Regan*, 833 F.2d, 149, 155 (9th Cir.1987)).

Although the Ninth Circuit has not issued a ruling enumerating factors a court should apply in deciding a motion to stay discovery while a dispositive motion is pending, federal district courts in the Northern and Eastern Districts of California have applied a two-part test when evaluating whether discovery should be stayed. *See, e.g.*, *Mlenjnecky v. Olympus Imaging America, Inc.*, 2011 WL 489743 at *6 (E.D. Cal. Feb. 7, 2011) (collecting cases). First, the pending motion must be potentially dispositive of the entire case or at least dispositive of the issue on which discovery is sought. *Id.* Second, the court must determine whether the pending potentially dispositive motion can be decided without additional discovery. *Id.* In applying this two-factor test, the court deciding the motion to stay

5

1 must take a "preliminary peek" at the merits of the pending dispositive motion to assess whether a stay
2 is warranted. *Id.* If the party moving to stay satisfies both prongs, a protective order may issue;
3 otherwise, discovery should proceed. *Id*.

4 In evaluating the propriety of an order staying or limiting discovery while a dispositive motion
5 is pending, this court considers the goal of Federal Rule of Civil Procedure 1, which states that the rules
6 must "be construed and administered to secure the just, speedy, and inexpensive determination of every
7 action." *Id.* The court must weigh the expense of discovery with the underlying principle that a stay
8 of discovery should only be ordered if the court is "convinced" that a plaintiff will be unable to state
9 a claim for relief. As the court in *Mlenjnecky* stated, taking a "preliminary peek" and evaluating a
10 pending dispositive motion puts a magistrate judge in an awkward position. 2011 WL 489743 at *6.
11 The district judge will decide the dispositive motion and may have a different view of the merits of the
12 underlying motion. *Id.*

13 Thus, this court's "preliminary peek" at the merits of the underlying motion is not intended to
14 prejudge its outcome. Rather, this court's role is to evaluate the propriety of an order staying or limiting
15 discovery with the goal of accomplishing the objectives of Fed. R. Civ. P. 1. With this Rule as its prime
16 directive, this court must decide whether it is more just to speed the parties along in discovery and other
17 proceedings while a dispositive motion is pending, or whether it is more just to delay or limit discovery
18 and other proceedings to accomplish the inexpensive determination of the case.

19 **C.     Discussion**

20         **1.     Defendants' Motion To Dismiss Warrants A Stay**

21 Defendants' motion to dismiss asserts that dismissal is proper because the amended complaint
22 (#1 Exhibit C) fails to state a claim upon which relief can be granted, as (1) the Nevada Supreme Court
23 has expressly refused to recognize a cause of action for negligent interference with prospective
24 economic advantage, and (2) plaintiff's claim for declaratory relief/rescission is barred by the doctrine
25 of issue preclusion. (#7). Plaintiff's opposition to the motion to dismiss argues that issue preclusion

26                                        6

does not bar his second claim, because the issue of impossibility was never litigated and an appeal is pending. (#8). Plaintiff does not address the dismissal of his first claim. *Id.* The District Judge will most likely grant the motion to dismiss with respect to the first claim. *See* Local Rule 7-2(d) (stating that "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."). This court, therefore, need only take a "preliminary peek" into the merits of the motion to dismiss (#7) as it pertains to plaintiff's second claim for relief.

Defendants cite *In re Sandoval,* 323 P.3d 422, 423 (Nev. 2010) for the proposition that "issue preclusion prevents re-litigation of an issue decided in an earlier action, even though the later action is based on different causes of action and distinct circumstances." (#7). The defendants then list four factors that the court must apply when determining if issue preclusion applies: "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation"; and (4) the issue was actually and necessarily litigated." *Id* (quoting *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1055, 194 P.3d 709, 713 (2008)).

Defendants argue that plaintiff's second claim asks the court to declare that it is impossible for the plaintiff to perform under the Agreement due to the government's criminal forfeiture and eventual sale of the Crazy Horse Too. *Id.* The defendants state that plaintiff took this same position in the State Action in his opposition to the motion to reduce settlement agreement (#7 Exhibit A). *Id.* In the opposition, plaintiff argued on Page 7, beginning on Line 12, that "[i]n this case, based upon the facts illustrated above, there are defenses to the allegation of breach[,] primarily, but not limited to, the defense of impossibility and/or impracticability of performance due to unforeseen circumstances." (#7 Exhibit A). The plaintiff also stated that the "unforeseen circumstances" include the government taking control of the club and its assets, reducing the value of the club, and selling the club for much less then

1  what was owed to the note-holder." *Id.* The issue of impossibility before this court is identical to that
2  raised in the State Action, and the first factor is satisfied. *Five Star Capital Corp.*, 194 P.3d at 713.

3        Defendants argue that the second factor is satisfied, because the Honorable Timothy C. Williams
4  denied plaintiff's "contractual defenses including the impossibility and entered judgment in favor of
5  the Henrys on the grounds that the settlement agreement unequivocally required Rizzolo to pay the
6  Henrys regardless of whether the Crazy Horse Too netted sufficient funds." (#7). Attached as Exhibits
7  B and C, are the order and the judgment from the State Action. *Id* (Exhibits B and C). The Judge's
8  order states that "[t]he plain language of the Agreement requires [d]efendant Rick Rizzolo to make the
9  remaining payment of the settlement amount if the sale of the Crazy Horse Too Gentlemen's Club does
10 not make enough proceeds to meet the required amount," and that "the wording of the Agreement
11 accurately memorializes the intention of the parties, that once the funds from the Crazy Horse
12 Gentlemen's Club are exhausted, [d]efendant Rizzolo is responsible for the remaining payment of the
13 settlement between himself and [the Henrys]." *Id* (Exhibit B). The judgment states that "Rick Rizzolo
14 is obligated to make the remaining payment of the settlement to [the Henrys]" because the sale did not
15 net the proceeds required to satisfy the $9,000,000.00 judgment, and that he is in breach of the
16 Agreement due to his failure to make further payments. *Id* (Exhibit C).

17       The order and judgment demonstrate that the court considered Rizzolo's argument regarding
18 impossibility and did not find it persuasive. (#7 Exhibit B and C). As the issue before this court was
19 litigated, decided on the merits, and the decision is final, the second and fourth factors are satisfied.
20 *Five Star Capital Corp.*, 194 P.3d at 713. With regard to the third factor, the parties in this action are
21 the same parties from the State Action. *Five Star Capital Corp.*, 194 P.3d at 713.

22       Plaintiff's two arguments against dismissal based on issue preclusion will likely fail. Plaintiff's
23 first argument relates to *claim* preclusion and not *issue* preclusion. (#8). These are two separate
24 concepts. *See Five Star Capital Corp.*, 194 P.3d at 713 ("[W]hile claim preclusion can apply to all
25 claims that were or could have been raised in the initial case, issue preclusion only applies to issues that

8

were actually and necessarily litigated and on which there was a final decision on the merits."). Plaintiff's second argument is that since there is a pending appeal of the State Action, the judgment has no preclusive effect. (#8). This argument will likely fail because, "[i]n issue preclusion cases, a decision is final and maintains its preclusive effect even if the judgment is on appeal." *City of Las Vegas v. Bluewaters Family Ltd. P'ship*, 55878, 2013 WL 431045 (Nev. Jan. 31, 2013)(citing *Edwards v. Ghandour*, 123 Nev. 105, 117, 159 P.3d 1086, 1094 (2007), rejected on other grounds by *Five Star Capital Corp,* 194 P.3d at 712– 13).

After taking a "preliminary peek" into the pending motion to dismiss (#7), the court finds that staying discovery is warranted. *See, Mlenjnecky*, 2011 WL 489743, at *6. The motion (#7) could be potentially dispositive of <u>all</u> of plaintiff's claims against the defendants. *Id.* Defendants do not raise any factual issues in their motion (#7), and based on defendants' grounds for dismissal that (1) the Nevada Supreme Court has expressly refused to recognize a cause of action for negligent interference with prospective economic advantage (which plaintiff did not address), and (2) plaintiff's claim for declaratory relief/rescission is barred by the doctrine of issue preclusion, no discovery is necessary for the court to address and issue a ruling on the motion to dismiss (#7). *Id.* As defendants satisfied both prongs of the test enumerated by the court in *Mlenjnecky*, entering a protective order staying discovery is appropriate. *See, Mlenjnecky*, 2011 WL 489743, at *6. The court also finds that a stay of discovery will accomplish the inexpensive and speedy determination of the action, as the parties will not incur unnecessary discovery costs during the pendency of the motion to dismiss (#7). *See* Fed. R. Civ. P. 1.

Accordingly, and for good cause shown,

IT IS ORDERED that defendants Kirk and Amy Henry's Motion To Stay Discovery Pending the Court's Ruling on the Motion to Dismiss (#10) is GRANTED.

IT IS FURTHER ORDERED that discovery in this action is STAYED until October 30, 2013, or further order from this court. If all claims are not dismissed by disposition of the defendant's motion to dismiss (#7), no later than the earlier of fifteen (15) days after the entry of the court's ruling on

1  defendant's motion to dismiss (#13) or October 30, 2013, the parties must file a new stipulated
2  discovery plan and scheduling order.  This stay will be lifted upon the filing of that stipulated discovery
3  plan and scheduling order.
4  DATED this 3rd day of May, 2013.

**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**