**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Frederick Rizzolo,<br><br>    Plaintiff,<br><br>v.<br><br>Kirk Henry, et al.,<br><br>    Defendants. | Case No.: 2:12-cv-2043-JAD-VCF<br><br>**Order Granting<br>Motion to Dismiss [Doc. 7]** |

Kirk Henry was rendered quadreplegic in 2001 by a bouncer at the Crazy Horse Too Gentleman's Club in Las Vegas, Nevada. Henry and his wife Amy sued the club's owner The Power Company, Inc. (TPCI) in Nevada state court and reached a 2006 settlement agreement with TPCI and its president, Frederick "Rick" Rizzolo for $1 million at signing and $9 million deferred until the sale of the club, regardless of the amount netted by the sale.[1] The Henrys received the $1 million payment when the settlement agreement was signed, but when the club—once valued at $53 million—eventually sold at a non-judicial foreclosure sale for just $3 million, the Henrys' remaining $9 million remained unpaid.[2] On the Henrys' motion, Nevada state court Judge Timothy Williams reduced the settlement agreement to a judgment.[3]

Rizzolo appealed to the Nevada Supreme Court, and he filed the instant suit against the Henrys in state court, which was removed to this court. He asserts two claims: (1) negligent interference with prospective business advantage and (2) for a declaration that the Henrys are not entitled to the $9 million under the settlement agreement because Rizzolo's performance of the payment obligation has been rendered impossible by developments in a federal prosecution against Rizzolo and TPCI that reduced the value of the club and left the Henrys without a right to its sale

---

[1] Doc. 7-1 at 22; *The Power Company, Inc. v. Henry*, 321 P.3d 858, 860 (Nev. 2014).

[2] Doc. 1 at 25-26; *Henry*, 321 P.3d at 860.

[3] *Id.*; Doc. 7-1 at 18.

1

proceeds.[4] On June 14, 2014, the Nevada Supreme Court affirmed Judge Williams's decision to reduce the settlement agreement to judgment.[5] In doing so, the court considered and rejected the very contractual defenses that form the basis for Rizzolo's instant declaratory relief claim.[6]

The Henrys move to dismiss this case, arguing that Nevada does not allow recovery for negligent interference with prospective business advantage and that Rizzolo's declaratory relief claim is precluded by the Nevada Supreme Court's affirmance of Judge Williams's order and judgment. I agree, and I grant the motion to dismiss for the reasons below.

## Discussion

### A. Nevada does not recognize a claim for negligent interference with prospective economic advantage.

Rizzolo alleges that the Crazy Horse Too was appraised at $53 million in 2007 when he began serving his sentence for tax fraud and the court ordered the sale of the club to satisfy Rizzolo's and TCPI's restitution obligations—which included the sums due the Henrys—under their guilty plea agreements.[7] And although the Henrys entered into a Petition and Settlement Agreement and Stipulation for Entry of Order of Forfeiture that would have placed them at the top of the pay-out list had the club sold in the $30 million range (as it appraised in September 2007), they later "abandon[ed] their interest in the Crazy Horse Too."[8] The club's exotic dance use permit expired in June 2008, causing "the extreme devaluation" of the club, and the court authorized the non-judicial foreclosure of the club in 2001; it sold for just $3 million, leaving Rizzolo without funds to satisfy his remaining $9 million obligation to the Henrys.[9]

By his first claim for relief, Rizzolo alleges that he once "had a reasonably probable future

---

[4] Doc. 1 at 7, 21.

[5] *Henry*, 321 P.3d at 863.

[6] *Id.*

[7] Doc. 1 at 23-24.

[8] *Id*. at 25-26.

[9] *Id*. at 28-29.

2

economic benefit and advantage of both paying the remaining settlement amount to" the Henrys, "the restitution owed to the US Government and receiving residual monies after settlement of all claims" due to "[a]n economic relationship" between himself "and the US Government whereby, upon the sale of [the club], after [the Henrys'] restitution was to be paid, Mr. Rizzolo would receive any residual amounts left over."[10] But the Henrys' "negligent" relinquishment of their interests in the Crazy Horse Too permitted the property to sell for a mere $3 million and thereby caused Rizzolo to lose the ability to repay the Henrys from the once-anticipated tens of millions of dollars in proceeds he expected the club would net.[11] This "negligence," he claims, "caused damage to Mr. Rizzolo" by interfering in his relationship with the government and causing Rizzolo to lose "any economic benefits or advantage reasonably expected" from his federal plea agreement.[12]

Nevada does not recognize a claim for negligent interference with a prospective economic advantage. In *Local Joint Executive Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern*, the Nevada Supreme Court adopted the majority approach to wrongful-interference-with-prospective-economic-advantage claims and held that "Purely economic loss is recoverable in actions for tortious interference with contractual relations or prospective economic advantage, but the interference must be intentional."[13] And in *Las Vegas-Tonopah-Reno Stageline, Inc. v. Gray Line Tours of So. Nev.* the Nevada Supreme Court further clarified that interference with a prospective economic advantage is only actionable if the interference is "purposeful"—not due to

---

[10] *Id.* at 28.

[11] *Id.* at 28-29.

[12] *Id.*

[13] 651 P.2d 637, 638 (1982). This principle is based on the well-established economic loss rule, which recognizes "that absent privity of contract or an injury to person or property, a plaintiff may not recover in negligence for economic loss." *Id.* Although the Nevada Supreme Court has acknowledged that purely economic loss may be recoverable if the tort claim is not the type historically barred by the doctrine—such as claims for "negligent misrepresentation and professional negligence claims against attorneys, accountants, real estate professionals, and insurance brokers," *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 206 P.3d 81, 85-87 & n.6 (Nev. 2009)—Rizzolo's complaint contains no suggestion that the Henrys made a negligent misrepresentation to Rizzolo, let alone that they owed him any professional duty historically permitted under Nevada law.

3

"mere negligence or inadvertence."[14]

Rizzolo makes it clear that his wrongful interference claim is based on purely negligent conduct, not intentional conduct, and which caused him to lose "any economic benefits or advantage reasonably expected" from his federal plea agreement—i.e., economic loss.[15] As negligent interference with a prospective economic advantage is not actionable in Nevada, and Rizzolo fails to allege facts supporting an exception to the doctrine, his first claim for relief must be dismissed under Rule 12(b)(6) for failure to state a cognizable claim.

**B.      Rizzolo's declaratory relief claim is barred by issue preclusion.**

By his second claim for relief, Rizzolo seeks judicial declarations that (1) the Henrys "knowingly and voluntarily forfeited their rights to recovery under the Settlement Agreement, rescinding said Agreement," and (2) it is now impossible for Rizzolo to perform his payment obligations under the settlement agreement.[16] When the Henrys first filed this motion to dismiss they argued that this claim is barred by issue preclusion because Judge Williams adjudicated—and rejected—these very same defenses when reducing the settlement agreement to judgment.[17] After the Nevada Supreme Court affirmed Judge Williams's decision, the Henrys supplemented their motion to add that the Nevada Supreme Court, too, has considered these defenses and similarly found them meritless.[18]

For the doctrine of issue preclusion to prevent relitigation of an issue: "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue

---

[14] 792 P.2d 386, 388 (Nev. 1990); *accord*, *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) ("interference with contractual relations is an intentional tort").

[15] *See* Doc. 1 at 27-29 (claim title; ¶ 31 (referencing "due care"); ¶ 31 & 32 (referencing the "negligent assignment" and stating that defendants were "negligent in assigning their rights"); ¶ 32 & 33 ("referring to "said negligence")).

[16] *Id.* at 30.

[17] Doc. 7 at 6.

[18] Doc. 24.

was actually and necessarily litigated."[19]  "Issue preclusion . . . applies to prevent relitigation of only a specific issue that was decided in a previous suit between the parties, even if the second suit is based on different causes of action and different circumstances."[20]

Rizzolo wholly fails to offer any argument to oppose the Henrys' motion to dismiss his first requested judicial declaration that the Henrys "knowingly and voluntarily forfeited their rights to recovery under the Settlement Agreement, rescinding said Agreement." I construe this silence as consent to granting the motion in this regard, and I may grant the motion on this basis alone.[21] But I also find that dismissal of this aspect of the claim is consistent with the Nevada Supreme Court's implied conclusion that the settlement agreement is valid and enforceable.[22]  Accordingly, I grant the Henrys' motion to dismiss Rizzolo's first request for declaratory relief for both reasons.

Rizzolo's second declaratory-relief theory is squarely barred by issue preclusion.  First, the impossibility of Rizzolo's performance under the terms of the agreement is substantively identical to the impossibility defense Rizzolo raised in the Nevada State court action.[23]  Second, Judge Williams rejected plaintiff's impossibility defense and found that the settlement unequivocally required Rizzolo to pay the Henrys regardless of the amount of sale proceeds from the Crazy Horse Too; the Nevada Supreme Court expressly affirmed that ruling on appeal.[24]  And even assuming *arguendo* that there was any doubt that Judge Williams's order was "final" for preclusion purposes while the case was on appeal, the Nevada Supreme Court's disposition of Rizzolo's appeal has conclusively resolved the issue.  The third factor is satisfied because Rizzolo was a named plaintiff in both this action and the state court action.  Finally, the issue that forms the basis for this claim was "actually

---

[19] *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008); *accord*, *In re Sandoval*, 232 P.3d 422, 423 (Nev. 2010).

[20] *Five Star Capital*, 194 P.3d at 713-14.

[21] Nev. L.R. 7-2(d) ("the failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion.").

[22] *Henry*, 321 P.3d at 863.

[23] *See* Doc. 7-1 at 10.; 7-2 at 33-38; *Henry*, 321 P.3d at 863 & n.6.

[24] Doc. 7-1 at 14-20; *Henry*, 321 P.3d at 863.

5

and necessarily litigated" because Judge Williams disposed of each of Rizzolo's contractual defenses, specifically including this impossibility theory, when he ordered enforcement of the settlement agreement and reduced it to a judgment. Accordingly, the remainder of Rizzolo's declaratory relief claim is barred by the doctrine of issue preclusion and must be dismissed.

## Conclusion

Accordingly, based upon the foregoing reasons and with good cause appearing and no reason for delay, IT IS ORDERED, ADJUDGED, AND DECREED that the Henrys' Motion to Dismiss [Doc. 7] is **GRANTED.** This action is dismissed, and the Clerk of Court is instructed to enter judgment accordingly and close this case.

DATED: December 2, 2014.

_____
Jennifer A. Dorsey
United States District Judge